**MINNEAPOLIS GAS COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

Shamrock Oil and Gas Corporation,
Intervenor.

No. 15452.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 27, 1960.

Decided March 9, 1961.

Mr. George C. Mastor, Minneapolis, Minn., with whom Messrs. P. L. Farnand, Minneapolis, Minn., and George C.

Pardee, Omaha, Neb., were on the brief, for petitioner.

Mr. Howard E. Wahrenbrock, Sol., Federal Power Commission, with whom Mr. John C. Mason, Gen. Counsel, Federal Power Commission, and Messrs. Samuel B. Ross, Francis J. Gilmore, and Edwin J. Reis, Attys., Federal Power Commission, were on the brief, for respondent.

Mr. Bradford Ross, Washington, D. C., with whom Mr. David I. Granger, Washington, D. C., was on the brief, for intervenor.

Messrs. William W. Ross, and J. David Mann, Jr., Washington, D. C., filed a brief on behalf of the United Gas Improvement Co., as amicus curiae, urging reversal.

Mr. William M. Bennett, San Francisco, Cal., filed a brief on behalf of the People of the State of California and the Public Utilities Commission of California, as amici curiae, urging reversal.

Mr. Everett C. McKeage, San Anselmo, Cal., also entered an appearance for the Public Utilities Commission of California.

Mr. Kent H. Brown, Albany, N. Y., filed a brief on behalf of the Public Utilities Commission of New York, as amicus curiae, urging reversal.

Mr. William E. Torkelson, Madison, Wis., filed a brief on behalf of the Public Service Commission of Wisconsin, as amicus curiae, urging reversal.

Before PRETTYMAN, WASHINGTON and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition to review orders of the Federal Power Commission.[1]

The Shamrock Oil and Gas Corporation (which we shall call "Shamrock") was an independent producer of natural gas. It had had contracts for some years with an interstate pipeline company. The contract rates were 8 cents and 9 cents per Mcf. The contracts provided for one increase of one cent per Mcf during the twenty-year terms of the agreements. Minneapolis Gas Company, our petitioner, is a local distributor which purchases its supply of gas from the interstate pipeline company, party to these contracts. Shamrock filed with the Commission new schedules of its rates, proposing the increases. The Commission issued an order by which it entered upon a hearing concerning the lawfulness of the proposed rates. By the same order it suspended the new schedules pending the hearing and decision thereon. The hearing proceeded before an Examiner. Shamrock presented three witnesses and seventeen exhibits. The Examiner inquired, "Does that now complete the direct case by Shamrock?", and counsel for Shamrock replied, "Yes, that concludes our direct." Counsel for the Commission moved to dismiss the proceedings, on the grounds that the data presented did not discharge the statutory burden upon the applicant and the evidence furnished no basis for a determination as to the justness and reasonableness of the proposed new rates. The Examiner inquired whether any counsel in the proceeding desired to cross-examine Shamrock's witnesses or to offer any evidence of their own. All counsel answered both questions in the negative. Thereupon the Examiner fixed dates for the filing of briefs and declared the hearing concluded. In due course the Examiner issued a decision, in which he concluded that Shamrock had failed to sustain its burden of proof, and he granted the motion to dismiss the applications. Exceptions to the decision were made. The Commission entered an order, in the preliminary parts of which it recited, *inter alia:*

"* * * we believe it is neither necessary nor appropriate nor in the public interest for us to inquire further into the justness and reasonableness of the rates here involved for we are of the opinion that the rates fall within the zone of reason-

1. An order and an order denying rehearing.

ableness and that the proceedings should be terminated leaving the proposed rates in effect."

And it recited:

"Taking into consideration all of these factors, the low price of this gas in relation to other prices in the area, the small increase requested, the fact that it is the only increase provided for in the contract during its 20-year term, the evidence of increased costs to Shamrock since the contract was executed and the need for still further investments in the future we are of the opinion that the rates of Shamrock are just and reasonable to the consuming public, and that further proceedings are unnecessary."

The Commission found:

"It is necessary and appropriate to carry out the provisions of the Natural Gas Act to terminate the above-entitled proceedings, to deny the motion for oral argument and to deny the alternative request to reopen the proceedings."

Thereupon the Commission terminated the proceedings.

The Natural Gas Act makes available to the Commission two distinct courses of action in respect to rates. These are in Sections 4(e) and 5(a) of the Act.[2] The former relates to new rates. Thirty days' notice of such rates must be given by the company to the Commission.[3] This section (4(e)) provides, so far as here pertinent:

"Whenever any such new schedule is filed the Commission shall have authority * * * to enter upon a hearing concerning the lawfulness of such rate * * *; and, pending such hearing and the decision thereon, the Commission * * * may suspend the operation of such schedule * * *, but not for a longer period than five months beyond the time when it would otherwise go into effect * * *. If the proceeding has not been concluded and an order made at the expiration of the suspension period, * * * the proposed change of rate * * * shall go into effect. Where increased rates or charges are thus made effective, the Commission may, by order, require the natural-gas company to furnish a bond * * * to refund any amounts ordered by the Commission * * *."

It is apparent from the foregoing that when a new schedule is filed the Commission may "enter upon a hearing concerning the lawfulness of such rate," and, pending the hearing and a decision thereon, the Commission may suspend the proposed increases.

The other statutory section (Section 5(a)) relates to any rate. It provides, in so far as here pertinent:

"Whenever the Commission, after a hearing had upon its own motion or upon complaint * * *, shall find that any rate * * * is unjust, unreasonable, * * * the Commission shall determine the just and reasonable rate * * * and shall fix the same by order * * *."

Under the latter section it is clear that the Commission may at any time enter upon a determination as to the justness and reasonableness of a rate.

In the case at bar the Commission entered upon a hearing concerning the lawfulness of proposed rates under the former of these two sections of the statute. That hearing was actually conducted and concluded. All parties announced that they had no further evidence to present. The Examiner made findings of fact, reached conclusions, and rendered an initial decision. Under the Administrative Procedure Act[4] the initial decision was

2. 52 Stat. 823–824 (1938), 15 U.S.C.A. §§ 717c(e), 717d(a) (1958).

3. Sec. 4(d), 52 Stat. 823 (1938), 15 U.S. C.A. § 717c(d).

4. Sec. 8(a), 60 Stat. 242 (1946), 5 U.S. C.A. § 1007(a).

a final decision unless upon exceptions the Commission itself concluded otherwise. The Commission received and heard arguments on exceptions. Thereupon the Commission terminated the proceedings. It did not render a decision.

■ We think it is clear enough that when a new schedule is filed the Commission has a broad discretion whether it will or will not permit the proposed rates to go into effect; that is, whether it will at that point enter upon a hearing concerning the lawfulness of the proposed rate. If it decides not to enter upon such a hearing at that point, consideration of the justness and reasonableness of the rate is possible at any later time, either upon complaint or upon the Commission's own motion, in a proceeding under the latter of the above-discussed statutory provisions, that is, under Section 5(a). The problem posed by the case at bar is whether the Commission can enter upon a hearing under Section 4(e), actually conduct such a hearing until it is concluded by an announcement by all parties that they have no further evidence, receive an initial decision of its Examiner and exceptions thereto, and then terminate the proceeding without a further decision. Such a termination at that point is the equivalent of a *nunc pro tunc* determination not to enter upon a hearing but to let the rates go into effect without a determination as to their lawfulness.

■ We think the Commission cannot terminate a proceeding after it has actually conducted a hearing to the point of receiving an Examiner's initial decision, without rendering a decision upon the issue presented, which is the lawfulness of the proposed rates. We do not have before us, and therefore do not decide,. whether the Commission may terminate a proceeding, once entered upon, at some point prior to the conclusion of the evidentiary hearing. A change of mind, midstream so to speak, may or may not be permissible. But we are of opinion

that the Commission, having received all the evidence the parties wish to present, and having before it an Examiner's findings, conclusion and decision, cannot at that point change its mind, wiping out the hearing as though it had never occurred, and in effect decide that it will not enter upon a hearing. The provisions of Section 4(e) seem to us to require that, if a hearing is held, all the pertinent evidence presented, and an initial decision rendered, the Commission is required either to let the initial decision stand as its decision or itself to render a decision.

■ The substance of the difference between termination of a proceeding, which is equivalent to a *nunc pro tunc* determination not to embark upon the proceeding, and a decision rendered upon the record is that the former lies within the broad discretion of the Commission, and so is not reviewable except for abuse, whereas the latter is circumscribed with requirements as to substantial basis and reasonable progress from that basis to the conclusion. The difference is not a mere technicality. It seems to us that the statute requires the Commission to make an early choice between its discretion and the binding necessities of a decisional process. It cannot, we think, pursue one course almost to the end and then protect its last step by reverting to its discretionary power. This may not be too important in the case at bar as a lone specific case, but as a general rule applicable to administrative proceedings generally, which it would be if we laid it down as a rule for this case, it would be a major error of considerable importance.

We realize the pressure of events which apparently caused the Commission to adopt the course it did adopt. It appears that far more schedules for new rates were filed by producers of natural gas than the Commission could possibly hope to consider within the thirty-day-notice period provided by Section 4(d) and (e). In the first years following the decision in the Phillips case,[5] which

5. Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954).

established Commission jurisdiction over the rates of independent producers, the Commission entered orders initiating hearings in respect to almost all these rates. Confronted with schedule filings numbering in the thousands and an unavoidable accumulation of a tremendous backlog of cases, the Commission determined to terminate those proceedings, leaving the rates for consideration under Section 5(a). The proceedings under this latter section would present for determination by the Commission only those rates as to which it appeared to the Commission, or upon complaint, that the rates were unjust and unreasonable. A complicating factor in the choice between procedures (i. e., Section 4(e) or Section 5(a)) is that under the 5(a) process no provision for refund bond is made. We sympathize with the difficulty in which the Commission finds itself, but we think the statute does not permit the course it here proposes to follow.

■ It is argued to us on behalf of Shamrock that the Commission did in fact make a decision as to the lawfulness of the proposed new rate. In its decision, as noted in one of the above quotations, the Commission said: " * * we are of opinion that the rates of Shamrock are just and reasonable to the consuming public * * *." And in its opinion on denial of rehearing the Commission said:

> "For these reasons among others, we concluded that Shamrock's proposed rates were just and reasonable to the consuming public. * * In any case, in addition to finding that the rates were just and reasonable we rested our decision on the separate and independent ground that we had the power to terminate

a proceeding of this kind without the necessity of making a finding of justness and reasonableness."

Shamrock urges us to treat such general statements as a decision upon the point and as an alternative basis for affirming. But, if we were to treat the statement as a decision, we would be compelled to vacate it for lack of findings to support it. The Commission made no findings. The Examiner's findings were to the effect that Shamrock, the proposer, had not sustained its burden of proof. Moreover we should observe that the documents now in this record, devoid of dollar amounts,[6] are not sufficiently definite or substantial to support findings upon justness and reasonableness.

The Commission opposes this argument of Shamrock and in its brief asserts that its discussion of justness and reasonableness was not a final determination of the lawfulness of the rates. We agree with the Commission as to what it seems to have done. It did not decide the issue of lawfulness.

■ It is urged to us that, in order now to render a decision upon the justness and reasonableness of these rates, the Commission would be compelled to enter upon a full-blown cost-of-service-rate-base inquiry. Whether in a particular case rate-base proof is necessary is something which the Commission must in the first instance decide, in the light of the statute and the relevant cases. As our opinion in City of Detroit, Michigan v. Federal Power Comm.[7] indicates, there may be situations in which rate-base proof constitutes the only "anchor, as it were, * * * by which to hold the terms 'just and reasonable' to some recognizable meaning."[8] But, as the Supreme Court has made clear, there are many cases in which rate-base proof

6. For example, documents showing decreases in well-head pressure and increases in compressor horse power, without indication of the costs in dollars involved.

7. 97 U.S.App.D.C. 260, 230 F.2d 810 (1955), certiorari denied Panhandle Eastern Pipe Line Co. v. City of Detroit, Michigan, 352 U.S. 829, 77 S.Ct. 34, 1 L. Ed.2d 48 (1956).

8. Id., 97 U.S.App.D.C. at page 269, 230 F.2d at page 819.

is unnecessary.[9] In this regard we note our agreement with the attitude taken by the Fifth Circuit with reference to problems such as those raised in the instant case.[10] It may well be that on the record ultimately made before it the Commission will decide that a cost-of-service-rate-base inquiry is not necessary. It must, of course, as we held in City of Detroit, relate its finding as to the justness and reasonableness of these rates to evidence and findings addressed to the consumer interest as well as to the Company's interests. It may in this case do so without an extensive inquiry, if some other method will satisfy the prime requirement we have indicated. The Commission might conclude that it should "adopt some pragmatic standard to apply to these cases"—to use the expression of the Court of Appeals for the Fifth Circuit in the Bel Oil case.[11]

The case will be remanded for entry of a decision. We also permit the Commission to reopen the proceedings but do not require it to do so. A problem of procedure for the Commission may be posed by this disposition of the case. We realize that our holding that a decision was required does not seem consistent with a reopening for further evidence. And for the future it may well be the Commission will adopt a rule which would require that when an applicant rests his case he has taken the gamble discussed by the Fifth Circuit in the Bel Oil case. But we agree with the view of that Circuit that, in the welter of confusion and conflict in these early days of the regulation of a complicated industry, procedural allowances, perhaps not suitable for permanent adoption, should be indulged to achieve fairness. We think it is clear that the Bel Oil decision was not intended to, and does not, prescribe a piecemeal process as a permanent right of applicants before the Power Commission. Neither do we intend our permission in this case for a reopening of the record to be a permanent rule. It is an auxiliary permission added in this case because of the novelty of a complicated and vigorously disputed exercise of regulatory power.

So ordered.

9. E. g., Federal Power Comm. v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944).

10. Forest Oil Corporation v. Federal Power Comm., 263 F.2d 622 (1959); Bel Oil Corporation v. Federal Power Comm., 255 F.2d 548, certiorari denied Long Island Lighting Co. v. Bel Oil Corporation, 358 U.S. 804, 79 S.Ct. 46, 3 L.Ed.2d 77 (1958).

11. Supra note 10, 255 F.2d at page 554.