LOUISIANA POWER & LIGHT
COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

NEW ORLEANS PUBLIC SERVICE,
INC., Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

MISSISSIPPI POWER & LIGHT
COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

ALLIED PAPER INCORPORATED,
Monsanto Company and Texasgulf,
Inc., Petitioners,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 75–2183, 75–2339, 75–2347
and 75–3057.

United States Court of Appeals,
Fifth Circuit.

Feb. 5, 1976.

William T. Tete, New Orleans, La., for petitioner in 75–2183.

Drexel D. Journey, George W. McHenry, Jr., Sol., Richard A. Oliver, Gen. Counsel, Fed. Power Comm., Washington, D. C., for respondent in 75–2183.

W. DeVier Pierson, Washington, D. C., for United Gas.

Edward J. Grenier, Jr., Washington, D. C., for Gen. Mtrs.

Paul G. Borron, Jr., Plaquemine, La., for Am. Sugar Cane and United Municipal Distributors Group (75–2183).

Andrew P. Carter, Monroe & Lemann, New Orleans, La., for Louisiana Power & Light Co. No. 75–2183.

John T. Miller, Jr., Washington, D. C., for Allied Paper, Inc. No. 75–3057.

Richard M. Merriman, Reid & Priest, Washington, D. C., for Mississippi Power & Light Co. No. 75–2347.

Clayton L. Orn, Houston, Tex., for N. O. Public Service, Inc. No. 75–2339.

Allan A. Tuttle, Sol., Federal Power Commission, Washington, D. C., for respondent.

William T. Miller, Wheatley & Miller, Washington, D. C., for United Municipal Distributors Group No. 75–2183 Only.

Floyd I. Robinson, Sutherland, Asbill & Brennan, Washington, D. C., for General Motors Corp. Nos. 75–2183, 75–2339 & 75–2347.

Platt W. Davis, III, William M. Sawyer, Vinson, Elkins, Searls, Connally & Smith, Washington, D. C., for Texas Eastern Transmission Corp. Nos. 75–2183, 75–2339 & 75–2347.

Michael J. Manning, Fulbright & Jaworski, Washington, D. C., for Entex, Inc. No. 75–2183 & No. 75–3057.

Peter J. Levin, Sharon, Pierson, Semmes, Crolius & Finley, Washington, D. C., for United Gas Pipe Line Co.

Wm. W. Bedwell, Bedwell & Rudolph, Washington, D. C., for Mississippi River Transmission Corp. Nos. 75–2339 and 75–2347 Only.

W. C. Nelson, New Orleans, La., for petitioner in 75–2339.

Richard T. Witt, Peyton G. Bowman, III, Washington, D. C., Sherwood W. Wise, Richard B. Wilson, Jr., Jackson, Miss., for petitioner in 75–2347.

Albert J. Feigen, Washington, D. C., for American Sugar Cane League No. 75–3057.

Harry E. Barsh, Jr., Washington, D. C., for State of La.

Before THORNBERRY, COLEMAN and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

The instant petitions for review of two orders of the Federal Power Commission call for an evaluation of the success with which the Commission responded to our mandate in *State of Louisiana v. FPC,* 5th Cir. 1974, 503 F.2d 844. Before entering a discussion of the numerous issues presented for decision, a brief review of the facts leading up to the instant petitions will prove beneficial.

In April, 1971, the Commission issued Order No. 431,[1] which required, *inter alia,* all jurisdictional pipe line companies anticipating natural gas shortages to file proposed curtailment plans with the Commission. In response to Order No. 431 and to replace its existing curtailment plan, United Gas Pipe Line Company filed a proposed five-priority plan with the Commission on May 17, 1971.[2] Included in the proposed plan was a tariff provision absolving United of damage liability arising under substitute fuel and delivery clauses in long-term contracts between United and its customers.[3] After forty-three days of hearings on the proposed plan, the Commission issued Opinion 606[4] on October 5, 1971. In Opinion 606 the Commission took the position that United's requested tariff provision was unnecessary, since adoption of a curtailment order would itself provide an "absolute defense" to suits under substitute fuel and other contract clauses. The Commission reiterated its position in Opinion 606–A.[5] In reviewing Opinion 606 this court, in the *International Paper Co.* case, characterized the Commission's statements as "mere dicta" without support in the record before the Commission. *See International Paper Co. v. FPC,* 5th Cir. 1973, 476 F.2d 121, 125. Opinion 606 rejected the fifth category of United's proposed curtailment plan, in which United had placed purchasers of its gas who were paying a comparatively low rate. Under Opinion 606, United's five-priority plan was reduced to a four-priority plan and immediately placed into effect pending a determination on remand to the Presiding Examiner as to the new plan's reasonableness and proper implementation. The remaining four categories of the United plan were as follows (in order of priority):

*Category I.* Domestic consumers of natural gas served directly or indirectly by United.

*Category II.* Industrial users of natural gas served directly by United, to the extent they use natural gas as a raw material in creating an end product rather than as (a) an agent for

1. 45 FPC 570 (1971).

2. United Gas Pipe Line Co. FPC Tariff § 12, First Revised Sheet No. 71 and Third Revised Sheet No. 72, Docket No. RP 71–120 (May 14, 1971).

3. The requested tariff provision provided as follows:

   Whenever Seller [United] prorates its gas supply or interrupts its service in accordance with this Section 12 of its Tariff so that customers of Seller do not receive the volume of natural gas they desire up to their Maximum Daily Quantities, . . . Seller [shall not] be obligated to pay or credit such customers any sums with respect to substitute fuels burned by such customer during such period of proration or interruption. United Gas Pipe Line Co. FPC Gas Tariff § 12.-3, Original Sheet No. 72–A, Docket No. RP 71–120 (May 14, 1941).

4. Opinion No. 606, Docket Nos. RP 71–29, RP 71–120, RP 71–99, United Gas Pipe Line Co., 46 FPC 786 (Oct. 5, 1971). The intermediate decision of the Administrative Law Judge was waived with Opinion 606.

5. Opinion 606–A, Docket Nos. RP 71–29, RP 71–120, RP 71–99, United Gas Pipe Line Co., 46 FPC 1290, 1292–93 (Dec. 3, 1971).

heating, cooling, dehydrating, or otherwise affecting industrial process materials, or (b) for other industrial purposes.

*Category III.* Electric generating stations, whether served directly or indirectly by United, to the extent that such stations serve domestic consumers of electricity.

*Category IV.* Users of United's natural gas, whether served directly or indirectly, to the extent not supplied under Categories I, II, and III.

The Presiding Examiner entered his decision in July, 1972. Six months later, in January, 1973, the Commission responded with Opinion 647,[6] which was the subject of this court's decision in *State of Louisiana v. FPC, supra.* Opinion 647 outlined a new, five-priority plan for ultimate implementation on the United system.[7] Opinion 647 further ordered United to immediately consolidate Categories III and IV above. This consolidation had the effect of destroying the priority previously enjoyed by electric utilities over certain industrial users of United's gas. Thus, pending implementation of a final, five-priority plan, Opinion 647 mandated an interim three-priority plan for United. The Commission's position in Opinions 606 and 606–A that a special tariff provision absolving United of contract liability was unnecessary was repeated in Opinion 647. After Opinion 647 was issued, however, we decided the *International Paper Co.* case. The Commission followed with Opinion 647–A,[8] where it argued that United faced no contract liability by reason of curtailment because United had not been guilty of improvidence or willful misconduct, and in any event, United's maximum exposure under substitute fuel clauses was only sev-

en days. Finally, Opinion 647 held favorably as to the "justness and reasonableness" of United's past curtailment plans: (1) a three-priority plan in effect from November 1, 1970, through March 31, 1971; (2) a three-priority plan in effect from April 1, 1971, through October 31, 1971; and (3) a four-priority plan in effect from November 1, 1971, through January 12, 1973 (the date of Opinion 647). In *State of Louisiana* this court reversed and remanded Opinions 647 and 647–A. In short summary, *State of Louisiana* held that the Commission was without statutory authority to require United to implement the new three-priority interim plan in the absence of a finding that the existing four-priority plan was "unjust, unreasonable, unduly discriminatory, or preferential." 503 F.2d at 861, *relying on American Smelting and Refining Co.,* 1974, 161 U.S.App. D.C. 6, 494 F.2d 925. This court denied all petitions for rehearing of *State of Louisiana,* but did grant the Commission's request for continued implementation of the three-priority interim plan pending action on remand in compliance with this Court's mandate. Shortly after the decision in *State of Louisiana,* we vacated and remanded orders of the Commission denying a motion by Louisiana Power & Light (LP&L) that the Commission examine LP&L's claim that certain industrials receiving gas through resale by United's pipe line and city gate customers were in effect being treated as Category I users, though they should have been treated as Category III users. *See Louisiana Power & Light Co. v. FPC,* 5th Cir. 1975, 509 F.2d 180. This is referred to by the Commission as the "misclassification problem." In remanding to the Commission, we directed that LP&L be allowed to present the merits of its misclassification argument.

**6.** Opinion No. 647, Docket Nos. RP 71–29, RP 71–120, United Gas Pipe Line Co., 49 FPC 179 (Jan. 12, 1973).

**7.** The Commission's proposed five-priority plan was adopted from the *Arkansas Louisiana Gas Co.* proceedings. Opinion No. 643, Docket No. RP 71–122, Arkansas Louisiana Gas Co., 49 FPC 53 (Jan. 8, 1973). The Com-

mission's proposed permanent plan for United, like all of United's prior curtailment plans, structured curtailment on the basis of "end use."

**8.** Opinion No. 647–A, Docket Nos. RP 71–29, RP 71–120, United Gas Pipe Line Co., 49 FPC 1211 (May 30, 1973).

On March 7, 1975, the Commission issued an order—one of two under review by the court at this time—in purported compliance with *State of Louisiana.*[9] In this order the Commission concluded that while United's four-priority plan had been just and reasonable at and during the time of its implementation, it had become "unjust, unreasonable, unduly discriminatory, and preferential" after the date of Opinion 647 (January 12, 1973). The Commission's conclusion hinged on two factual considerations: first, the present and future alternate fuel capabilities of the electric utilities, and second, the irreparable injury to the approximately 1800 industrial customers of United who would be denied any gas if the priority formerly enjoyed by the electric utilities under the four-priority plan is reinstated. These findings of the Commission, and the procedure by which they were reached, are the primary focus of petitioners' challenge to the March 7 order. In addition to its determination as to the four-priority plan, the Commission further found that the three-priority interim plan had provided for equitable and non-discriminatory curtailment during the two years that it had been in operation, and ordered United to continue to curtail gas deliveries under this plan until further order. The Commission also directed a hearing to consider whether "modifications" to the three-priority interim plan might be warranted pending adoption of a permanent curtailment plan for the United system. This portion of the remanded proceedings was denominated "Phase I" by the Commission, and was suspended on August 14, 1975, when the Administrative Law Judge certificated a settlement—opposed by LP&L and others—to the Commission. Finally, the Commission ordered that the ongoing hearings on a permanent plan for United continue, and denominated that portion of the proceedings as "Phase II." Included for consideration in Phase II was United's request for a tariff provision absolving it of con-

tract liability. By order of May 2, 1975 —the second order under review by this court—the Commission denied rehearing of its March 7 order, but did accept United's request that a separate proceeding (Phase III) be initiated to study the requested tariff provision abrogating contract liability. The instant petitions for review followed.

Three electric utilities and three industrial customers of United challenge the Commission's orders of March 7 and May 2. LP&L, New Orleans Public Service, Inc. (NOPSI), and Mississippi Power & Light (MP&L) all suffered injury when the Commission, in Opinion 647, ordered Categories III and IV consolidated in United's interim curtailment plan. That injury continued when this court, by order of December 13, 1974, allowed the Commission to continue the Opinion 647 plan in operation pending full compliance with *State of Louisiana.* Understandably the electric utilities are urging that the four-priority plan—under which they enjoyed a greater priority—should be reinstated by reason of the Commission's failure to comply with *State of Louisiana* on remand. All of the electric utility petitioners challenge the failure of the Commission to hold a hearing on the justness and reasonableness of the four-priority plan. *State of Louisiana* held that before the Commission could adopt the three-priority interim plan, it was necessary to examine the existing four-priority plan in light of the standards of section 4(b) of the Natural Gas Act and find it wanting. *See* 15 U.S.C. § 717c(b) (1970). The electric utilities argue that absent a hearing on this issue, the Commission could not make the required finding. LP&L further attacks, on a number of grounds, the Commission's phasing of the proceedings on remand from *State of Louisiana.* In addition to challenging the absence of a hearing, NOPSI and MP&L argue that the Commission's finding that the four-priority plan violated the standards of

---

**9.** The text of the Commission's order is set out in the Joint Appendix, pp. 413–50.

section 4(b) is not supported by substantial evidence on the record considered as a whole.

The industrial customers of United attacking the March 7 and May 2 orders occupy a somewhat different position. They—Allied Paper, Monsanto, and Texasgulf, Inc.—have repeatedly made the argument that United unreasonably extended its delivery commitments knowing that the gas shortage was close at hand. The industrial petitioners are longstanding customers of United and contend that they should be afforded some priority over United's newer customers. In support of this position, the industrial petitioners argue that the decision in *State of Louisiana* precluded the Commission from determining the justness and reasonableness of past curtailment plans, that the Commission made no findings relative to petitioners' old-new customer preference arguments, that the record does not support the Commission in its determination as to the equitable operation of the three-priority interim plan, and that the Commission erred in not allowing the old-new customer preference arguments to be made in Phase I of the proceedings below.

All petitioners raise what has been termed the misclassification problem and challenge the Commission's assignment of this issue to Phase I of the proceedings below. Essentially, it is argued that certain industrial users of United's gas are obtaining their gas upon resale by United's pipe line and city gate customers, in effect creating a higher priority for those customers than they are entitled to under any of the curtailment plans in consideration. By placing the misclassification issue in Phase I, the Commission has, it is argued, improperly shifted the burden of proof onto petitioners in their attempt to have United "follow its plan."

■ As indicated above, petitioners argue that absent a new hearing before the Commission, compliance with this court's mandate in *State of Louisiana* was impossible. All of the parties fasten on different portions of the opinion in aid of their respective positions. The explicit language of *State of Louisiana,* however, provides no final answer to the question. On the basis of the past opportunities afforded petitioners to argue to the Commission the issues presented by the four-priority plan, the concerns expressed by this court in *State of Louisiana,* and a realistic appraisal of the goals to be served by a hearing before the Commission, we conclude that the Commission was not required to provide petitioners a new and independent hearing on the four-priority plan and the extent to which it comports with the standards of the Natural Gas Act.

Petitioners ground their hearing argument on section 5(a) of the Natural Gas Act,[10] section 554(c)(1) of the Administrative Procedure Act,[11] and the Due

---

10. Section 5(a), 15 U.S.C. § 717d(a), provides: "Whenever the Commission, after a hearing had upon its own motion or upon complaint of any State, municipality, State commission, or gas distributing company, shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection with any transportation or sale of natural gas, subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order: *Provided, however,* That the Commission shall have no power to order

any increase in any rate contained in the currently effective schedule of such natural-gas company on file with the Commission, unless such increase is in accordance with a new schedule filed by such natural-gas company; but the Commission may order a decrease where existing rates are unjust, unduly discriminatory, preferential, otherwise unlawful, or are not the lowest reasonable rates."

11. Section 554(c)(1), 5 U.S.C. § 554, provides in pertinent part that:

The agency shall give all interested parties opportunity for . . . the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding[s], and the public interest permit . . . . .

Process Clause of the Fifth Amendment. Whatever may be the value of petitioners' argument in other contexts, it overlooks the fact that hearings addressing all of the pertinent issues have already been held before the Commission. As early as Order No. 431 in April, 1971, the electric utility customers of United were placed on notice that the Commission was going to give consideration to curtailment of large boiler fuel sales in passing on curtailment plans submitted in response to that order.[12] All of United's prior curtailment plans contained a priority for gas used to generate domestically consumed electricity, and those plans were the principal subject of the forty-three days of hearings that culminated in Opinion 606.[13] A considerable amount of evidence was adduced at these hearings on precisely the issue that brings the electric utilities into the present dispute—the preference afforded gas used to generate electricity for domestic consumers. Furthermore, petitioners were permitted over objection to present evidence in favor of a continued priority for themselves in hearings held after the issuance of Opinion 647 on a permanent curtailment plan for United.[14] To argue at this late date that petitioners were afforded insufficient notice and opportunity to be heard before the Commission is futile.

■ Petitioners' argument can be reduced to the proposition that to avoid a successful charge that it simply inserted "magic words" in its March 7 and May 2 orders, the Commission was required to hold a hearing on remand as to the four-priority plan. The assumption behind such an argument is that the only sufficiently reliable indicator of whether the Commission undertook a bona fide re-ex-

amination of the four-priority plan in light of the standards of section 4(b) of the Natural Gas Act is the fact of a hearing before the Commission. We are of the opinion, however, that petitioners' argument unnecessarily restricts the scope of procedural options available to the Commission. A hearing before the Federal Power Commission is not an end unto itself. Rather, the end is proper presentation and development of sufficient record evidence to support the particular course of action chosen by the Commission. In the final analysis, the only indicia of conscientious agency action to which an appellate court can look with certainty is the agency's written statement of findings, the reasons given in support of those findings, and the extent to which record evidence provides a foundation for those findings. *State of Louisiana v. FPC*, 503 F.2d at 871–72; *see FPC v. Texaco*, 1974, 417 U.S. 380, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141; *Burlington Truck Lines v. United States*, 1962, 371 U.S. 156, 167–68, 83 S.Ct. 239, 245, 9 L.Ed.2d 207; *SEC v. Chenery*, 1947, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995. Petitioners' attempts to draw the issue in this case at whether or not the Commission was required to hold a hearing on remand suggests a misapprehension of the above stated function of a hearing before the Commission. A correct statement of the issue in this case is whether the Commission's orders of March 7 and May 2 are supported by substantial evidence on the record considered as a whole and the substantial evidence standard is the one to which we look. As will become clear, however, the fact that the Commission was not as an original matter required to hold a hearing on the continued justness and reasonableness of the four-pri-

---

12. *See* Order No. 431, 45 FPC 570, 572 (1971).

13. The forty-three days of hearings stretched from December 21, 1970, to July 27, 1971, produced a record of 6000 pages and 183 exhibits, and included extensive examination and cross-examination of United's witnesses, as well as testimony from a large number of expert and management witnesses of companies affected by United's curtailment plans.

14. NOPSI's witness, Mr. Joseph Benson, testified as to his preference for the four-priority plan, Joint Appendix at 173, and challenged the Commission's basis for consolidation of Categories III and IV in the interim plan—the inferiority of boiler fuel gas usage. Joint Appendix at 174–80.

ority plan does not ipso facto provide the Commission's orders with the imprimatur of substantial evidence. On the contrary, from our examination of the Commission's finding of irreparable harm, and the extent to which the record fails to provide support for a crucial assumption behind that finding, we conclude that the Commission's determination as to the four-priority plan's unjust and unreasonable character after the date of Opinion 647 is not supported by substantial evidence on the record considered as a whole.

Notwithstanding the Commission's lack of statutory authority to adopt a new curtailment plan without first finding an existing plan invalid under the Act, this court in *State of Louisiana* did find sufficient record support at that time for the Commission's immediate and interim consolidation of Categories III and IV of the Opinion 606 plan, and the consequent destruction of the priority formerly enjoyed by the electric utilities.

> To summarize, the record would contain enough evidence to support FPC's interim action in subordinating gas used for domestic power generation if FPC had statutory authority to take that action.

503 F.2d at 861. And at another point in the opinion.

> Therefore the Commission's order requiring immediate subordination of gas used to generate domestic electricity has enough evidentiary support to pass muster, especially in light of [the] emergency allotments to protect electrical consumers.

503 F.2d at 860.

The order of reversal and remand in *State of Louisiana* followed from our concern that the Commission was unmindful of its statutory obligation to examine an existing plan under the standards of section 4(b) and find it wanting before adopting a new curtailment plan. We concurred in the Commission's appraisal of the need to subordinate gas used to generate domestically consumed electricity; we remanded to insure that the Commission's appraisal was made within the framework of the Act. In short, we deferred to the Commission for a determination as to whether the inferiority of the four-priority plan was sufficient to rise to the level of making that plan "unjust, unreasonable, unduly discriminatory, or preferential" within the meaning of the Act. As noted above, the March 7 order turns on two factual considerations: the alternate fuel capabilities of the electric utilities *and* the serious and irreparable harm to the approximately 1800 industrial customers of United that would follow re-implementation of the four-priority plan. We read the March 7 order as expressing the view of the Commission that both of these factors are essential to the statutory determination it made as to the four-priority plan. *See State of Louisiana v. FPC, supra* ; *cf. FPC v. Texaco, Inc.,* 417 U.S. at 397, 94 S.Ct. at 2326.[15] Consequently, substantial evidence on the record considered as a whole must provide an underpinning for both factual bases of the March 7 order.

The March 7 order begins, quite properly, with the evidentiary assessment made by this court in *State of Louisiana* in favor of the interim subordination of gas used to fire large boilers in the generation of electricity for domestic

---

**15.** We decline to view the March 7 order as providing a parade of reasons from which *we* can pick and choose in determining whether the statutory standard of invalidity has in fact been met. Indeed, a contrary approach was employed by the court in *State of Louisiana.* We there accepted the factual support for the general inferiority of the four-priority plan, but remanded for a determination by the Commission as to whether that inferiority rose to the level of making the plan unjust, unreasonable, unduly discriminatory, or preferential. We now review the Commission's response in that context.

consumers.[16]  The Commission's order continues, however, by reference to the testimony of three witnesses given in the 1974 remanded proceedings to demonstrate the ongoing validity of its conclusions as to alternate fuel capability. Prepared rebuttal testimony of Mr. Joseph Benson, a witness for NOPSI, disclosed the following:

> Because of the natural gas shortage, the Company [NOPSI] has encountered difficulties in obtaining natural gas as a boiler fuel in its power plants. As a substitute fuel, the Company has been burning substantial quantities of fuel oil.[17]

Somewhat more specific testimony on May 30, 1974, by a witness for Gulf States Utilities Company confirmed the increasing reliance of electric utilities on alternate fuel systems.

> [This exhibit] shows the actual oil to gas burn ratio at [two generating stations] during the period from September 1972 through January 1974. You will note that the maximum percentage of oil burned was in December of 1973 [while the interim three-priority plan was in effect]. During such month we burned 64.7% oil and 35.3% gas at [one generating station]. You will also note that the quantity of oil burned varies from zero to 64.7% and changes significantly from month to month.

> \*    \*    \*    \*    \*    \*

> [F]or the months of November and December of 1974, and January and February of 1975, the percentage of oil to be burned is 100%. In other words, we are projected to be burning 100% oil and no gas at Nelson [Generating] Station during such period.[18]

Finally, the testimony of Mr. H. H. Bell on behalf of Mississippi Power Company revealed that "two-thirds of MP Co's net generating capacity is with coal-fired units." [19]  The Commission is free to look to evidence developed in hearings on a permanent curtailment plan in supervising the operation of an interim plan. *Consolidated Edison Co. v. FPC*, 1975, 168 U.S.App.D.C. 92, 512 F.2d 1332, 1343; *Consolidated Edison Co. v. FPC*, 1974, 167 U.S.App.D.C. 134, 511 F.2d 372, 381–82; *see FPC v. Louisiana Power & Light*, 1972, 406 U.S. 621, 644 n.18, 92 S.Ct. 1827, 1840, 32 L.Ed.2d 369; *cf. FPC v. Natural Gas Pipeline Co.*, 1942, 315 U.S. 575, 583–84, 62 S.Ct. 736, 742, 86 L.Ed. 1037. Similarly, the Commission should be free to look to such evidence

---

**16.** Borrowing verbatim from the opinion in *State of Louisiana*, the March 7 order detailed the following record evidence in support of the conclusions of the Commission as to the alternate fuel capabilities of the electric utilities.

> (a) Evidence showing oil is (or can be) used in existing boiler facilities.

Record testimony by utility representatives showed that some companies have an ability to burn fuel oil in their boilers. Gulf States can burn oil in generating units at two plants. Louisiana Power and Light has eight generating units which can burn oil on an emergency basis for up to sixty-five hours. Another LP&L unit can burn oil for seven days. Mississippi Power and Light's Greenville plant upon completion was predicted to be able to burn fuel oil continuously. At the time of the hearing MP&L had four generating units capable of "split-firing" (burning a combination of oil and gas) on an emergency basis. New Orleans Public Service, Inc. (NOPSI) has two generating units which can split-fire for three to five days at a time, and perhaps longer. One plant belonging to the South Mississippi Electric Power Association has operated "on a split-fired basis."

> (b) Evidence showing projected oil-burning boiler facilities.

Besides present oil-burning facilities, the record also shows that new facilities were being planned. Testimony showed that NOPSI expected to have most of its generating units converted so that they would have the capability of oil-burning by spring 1972. NOPSI had a plan to convert all its major generating units or major boilers to burn oil. Gulf States had employed a consultant to develop a construction schedule and cost estimate for converting "certain" Gulf States facilities to continuous full oil use. Joint Appendix at 432–34 (footnotes omitted); *See State of Louisiana v. FPC*, 503 F.2d at 859–60.

**17.** Joint Appendix at 435.

**18.** *Id.* at 436–37.

**19.** *Id.* at 438.

when passing on the continued compliance of an interim plan with the standards of section 4(b), even where the hearing on the permanent plan has not been completed. This is particularly true where, as here, the Commission is testing the ongoing validity of factual conclusions previously considered and found acceptable by a reviewing court. We hold that the Commission's findings as to the continued and improving ability of the electric utilities served by United to obtain alternate fuel supplies are supported by substantial evidence on the record considered as a whole.

The second factual basis of the Commission's order of March 7—the serious and irreparable harm to United's industrial customers—is not similarly blessed with record support. Petitioners challenge numerous aspects of the irreparable harm finding. For example, MP&L and NOPSI vigorously argue that the Commission improperly relied on extra-record materials in making its assessment of irreparable harm. We have no occasion to address all of petitioners' arguments in detail at this time. Assuming *arguendo* proper reliance by the Commission on all materials cited in its March 7 order, the finding of irreparable harm still suffers an overriding defect. No record or extra-record support is provided for the assertion that a shutdown of gas service to United's industrial customers will create "serious and irreparable injury, including plant closings, employee layoffs, and other forms of economic dislocation." [20] The validity of this assertion turns in large measure on the alternate fuel capabilities of United's *industrial* customers and the degree by which they can cope with deep curtailment.[21] Accepting all of the disputed evidentiary citations in the March 7 order, there is still no citation to evidence bearing on the alternate fuel capabilities

of United's industrial customers—the logical basis of any finding of irreparable harm to this class of natural gas users by virtue of reinstatement of the four-priority plan. In *State of Louisiana,* we specifically addressed the Commission's assertion that the three-priority plan would minimize the "economic impact" of curtailment.

> The second [reason], minimization of curtailment's economic impact, is premised on the notion that it is easier to find substitute fuels for boilers than for other industrial systems. Since this reason depends on the validity of another reason (availability of alternate fuels), it adds no support to FPC's decision and we shall discard it.

*State of Louisiana v. FPC,* 503 F.2d at 859. The Commission's order of March 7 fails to reflect any upward adjustment of this evidentiary deficiency in the interim. For this reason, we hold that the Commission's finding of irreparable harm is not supported by substantial evidence on the record considered as a whole. Accordingly, we reject the Commission's determination that the four-priority plan became "unjust, unreasonable, unduly discriminatory, and preferential" as of the date of Opinion 647.

Beyond the absence of record support for its finding of irreparable harm, the more fundamental problem with the March 7 order is its failure to specify in even general terms that set of circumstances which the Commission deems essential to a determination that an existing curtailment plan has become "unjust, unreasonable, unduly discriminatory, or preferential" within the meaning of the Natural Gas Act. We are, therefore, compelled to view both the alternate fuel and irreparable harm findings as indispensable elements in the Commission's determination of the four-priority plan's

---

**20.** *Id.* at 442.

**21.** After *State of Louisiana,* we would have been inclined to view the alternate fuel capabilities of United's industrial customers as a subject of inquiry more properly pursued in the hearings on a permanent plan for the United system. Nevertheless, by injecting the irreparable harm factor into the March 7 order, the Commission also and necessarily raises the issue of industrial alternate fuel capabilities.

invalidity. There can, of course, be no doubt as to the importance attached by the Commission to its finding of irreparable harm—which we have found wanting in record support. As stated by the Commission in the March 7 order:

The ability of utilities to use alternate fuel is an important factor in our determination that the four-priority plan is unjust and unreasonable, but it is not the sole basis of our decision. More important, perhaps, is the serious and irreparable harm that would ensue to hundreds of other industrial concerns if the utilities were to receive a preference.

Joint Appendix at 439.

To the extent the Commission remains firm on remand in its position that alternate fuel capability and irreparable harm are elements necessary to demonstrate the invalidity of an existing curtailment plan, record support for the finding of irreparable harm must be forthcoming. An examination of the alternate fuel capabilities of United's industrial customers should be viewed by the Commission as essential to having a finding of irreparable harm sustained on review by this court. To the degree that the record is devoid of such evidence, hearings on the issue of industrial alternate fuel capability *may be* warranted. The Commission, of course, is the first judge of the necessity of hearings, but any subsequent order must pass scrutiny under the substantial evidence standard. Of importance, the Commission is free on remand to formulate a "working definition" of the applicable statutory standard and apply it to the facts at hand. Indeed, effective appellate review is unduly hampered without this clear indication of the Commission's position. It may well be that any future elaboration of the statutory standard by the Commission will dispense with the apparent requirement of a showing of irreparable

harm by reason of the continued operation of an existing curtailment plan. Nevertheless, with the Commission's determination in the March 7 order explicitly dependent on two factual considerations—one of which is lacking in record support—we are unable to escape the conclusion that the Commission's determination of the four-priority plan's invalidity after the date of Opinion 647 is not supported by substantial evidence on the record considered as a whole.

■ Petitioners challenge two further determinations made by the Commission in the March 7 order: (1) the finding that the three-priority plan has provided for equitable and nondiscriminatory curtailment during the two years that it has been in effect, and (2) the finding that the four-priority plan was just, reasonable, and nondiscriminatory in its operation prior to the date of Opinion 647. We can quickly deal with the Commission's finding as to the three-priority plan, which we find to be unsupported by substantial evidence on the record considered as a whole. Indeed, the March 7 order contains no record citation whatsoever to support the finding that the three-priority plan has provided for equitable and nondiscriminatory curtailment during the past two years. We vacate the Commission's finding as to the three-priority plan. The Commission's finding as to the four-priority plan, however, presents more subtle problems, and an examination of those problems is warranted.

The transparent purpose of the Commission's findings with regard to the justness and reasonableness of United's past and present curtailment plans is to insulate the pipe line from devastating contract liability that may be incurred in pending damage suits.[22] In effect, the Commission is attempting to erect a continuous—though illusory [23]—line of defense for United by finding past curtail-

---

22. Damage suits are currently pending against United in both federal and state courts, and the potential liability faced by the pipe line exceeds $1 billion.

23. *See, e. g., International Paper Co. v. FPC*, 5 Cir. 1973, 476 F.2d 121, 125.

ment plans to have been just and reasonable during the period of their operation. As noted above, the Commission has with only scant deviation taken the position that adoption of a curtailment order provides an "absolute defense" to suits under substitute fuel and other contract clauses. *Compare* Opinion No. 606, Docket Nos. RP 71–29, RP 71–120, RP 71–99, United Gas Pipe Line Co., 46 FPC 786 (Oct. 5, 1971) *with* Opinion No. 647–A, Docket Nos. RP 71–29, RP 71–120, United Gas Pipe Line Co., 49 FPC 1211 (May 30, 1973). Appreciating this threat, petitioners argue that the Commission's finding as to the four-priority plan's character prior to January 13, 1973, was improperly made. Resolution of petitioners' challenge necessitates a two-step analysis. First, we must focus on the extent to which the Commission has authority or was required to make a finding on the affirmative justness and reasonableness of the four-priority plan. Second, we must examine the materials offered in support of that finding in light of the substantial evidence standard.

The Commission and United point to the fact that the Opinion 606 four-priority plan was the product of proceedings initiated under section 4 of the Natural Gas Act. On the authority of *Minneapolis Gas Co. v. FPC*, 1961, 111 U.S.App. D.C. 16, 294 F.2d 212, they argue that the Commission was required to proceed to a determination of the justness and reasonableness of the four-priority plan. We dissent from this view. The four-priority plan was placed in effect on October 5, 1971, pending a later determination of its justness and reasonableness. The Presiding Examiner entered his decision in July, 1972, and the Commission responded with Opinion 647 in January, 1973. Opinion 647 found that the four-priority plan was just and reasonable from the time of its implementation until January 13, 1973—the date of Opinion 647. Opinion 647 failed—as *State of Louisiana* emphatically found—to make a finding as to the plan's justness and reasonableness *after* that date. The de-

termination of the four-priority plan's justness and reasonableness prior to January 13, 1973, in the March 7 order is simply a reiteration of the same finding contained in Opinion 647. *Minneapolis Gas* does in fact stand for the proposition that once the Commission has initiated proceedings under section 4—and advanced as far as the Presiding Examiner's decision—a decision by the Commission on justness and reasonableness must subsequently be reached. The added wrinkle in the instant case, however, is the Commission's continuing opposition to the four-priority plan. Opinion 647 abandoned the four-priority plan, and the March 7 order seeks to finalize its demise. Had the Commission continued with its original support of the four-priority plan, a determination of justness and reasonableness would have been required under the logic of *Minneapolis Gas*. Having shifted its support to the three-priority plan and by virtue of our mandate in *State of Louisiana*, the only determination of justness and reasonableness required on the part of the Commission at the time of Opinion 647 was a determination that the four-priority plan became unjust and unreasonable prior to the adoption of the three-priority plan.

While the Commission was not required to make a finding as to the four-priority plan's justness and reasonableness, it was still authorized to make such a finding. In *State of Louisiana* we instructed the Commission to answer the following question:

Did the four-priority plan instituted in November 1971 meet the standards of Section 4(b) of the Natural Gas Act?

503 F.2d at 864. The thrust of the question posed was directed toward a determination of invalidity by the Commission and followed from the requirement that the Commission find an existing curtailment plan wanting before proceeding to adopt a new plan. Implicit in our direction to the Commission was the possibility that the determination on remand would be in favor of the continuing validity of the four-priority plan under the standards of section 4(b). Ascertaining a

particular date before which a curtailment plan is just and reasonable and after which the same plan is unjust and unreasonable is not the ideal administrative procedure to allay skepticism by a reviewing court. If supported by substantial evidence, however, the Commission may proceed along this course. We hold that the Commission's finding of justness and reasonableness prior to January 13, 1973, is not supported by substantial evidence on the record considered as a whole. The March 7 order contains no independent review of record evidence to support the Commission. Rather, the March 7 order cites the reader to the same fact determination stated just as summarily in Opinion 647. In *State of Louisiana* we gave limited approval to this particular administrative tactic; viz.; bolstering determinations under attack by reference to prior agency orders or opinions. *See* 503 F.2d at 857–58, 871–72. The predecessor opinion, Opinion 643, relied on by the Commission in Opinion 647 provided sufficient detail and record support to permit meaningful appellate review. This is not the case with the Commission's instant reliance on Opinion 647; one conclusory finding by the Commission is simply followed by another. Accordingly, we vacate the Commission's determination that the four-priority plan was just and reasonable in its operation prior to January 13, 1973.[24]

■ The Commission possesses broad powers to structure the proceedings before it. *See FCC v. Pottsville Broadcasting Co.*, 1940, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656; *City of San Antonio v. CAB*, 1967, 126 U.S.App.D.C. 112, 374 F.2d 326, 329. Given the complexity and difficulty of the legal and economic issues generated by deep curtailment on an extensive pipe line system, the phasing of proceedings on remand from our decision in *State of Louisiana* was an entirely proper course of action for the Commission. The electric utility petitioners argue, however, that placing their "misclassification" arguments in Phase I of the proceedings on remand—dealing with possible modifications to the three-priority interim plan—improperly shifted the burden of proof off of the Commission and United. Phase I of the proceedings below was suspended when the Administrative Law Judge certificated a proposed settlement to the Commission on August 14, 1975. Thus, petitioners' misclassification arguments, and the treatment afforded those arguments in Phase I, are matters still pending before the Commission. For this reason, we hold that petitioners' challenge to the placing of the misclassification arguments in Phase I is not yet ripe for judicial review. A petition to review the Commission's actions with regard to the proposed settlement is the appropriate vehicle for review of petitioners' burden of proof argument. As a final matter, the industrial petitioners argue that the Commission erred by refusing to place the old-new customer arguments in Phase I. We disagree. *State of Louisiana* emphatically reserves consideration of this aspect of the curtailment controversy to the proceedings on a permanent plan for United. 503 F.2d at 863–64. The Commission's delay in acting on a permanent plan for the United system is, of course, discouraging. Nevertheless, the delay that would ensue from requiring the Commission to place the preference arguments in the context of proceedings on an interim plan is of an even higher order. Moreover, we must give heed to the power of the Commission to control the scheduling and conduct of its own proceedings. *See FCC v. Pottsville Broadcasting Co., su-*

---

**24.** It should be borne in mind that with this holding the four-priority plan has thus never been found just and reasonable by the Commission on the basis of substantial evidence. Should the Commission abandon its support of the three-priority—an event we consider highly unlikely—it would be necessary to conduct hearings. on the justness and reasonableness of the four-priority plan in order to comply with the rule of *Minneapolis Gas*.

*pra.* We hold that the Commission did not err in refusing to consider petitioners' preference arguments in Phase I of the proceedings on remand.

 The problem of remedy remains. Following our decision in *State of Louisiana* and by order of December 13, 1974, we allowed the Commission to continue the three-priority plan in operation pending compliance with our mandate on remand. LP&L urges that the failure of the Commission to properly support its implementation of the three-priority plan with a prior determination of the four-priority plan's invalidity necessitates immediate re-implementation of the latter plan. In essence, LP&L argues that affording the Commission one opportunity to conform with the mandate of *State of Louisiana* was sufficient, and re-implementation of the four-priority plan is now required after a second failure. This court is mindful, however, of the fact that this year's winter heating season is upon us. Undoubtedly, complex fuel supply arrangements have been made with the three-priority plan in mind. The disruptive potential inherent in immediate re-implementation of the four-priority plan is formidable. Accordingly, we allow the Commission to continue the three-priority plan in operation for the duration of the current winter heating season. Nevertheless, this is the last year during which the three-priority plan will remain in operation without the support of a proper finding on the invalidity of the four-priority plan. Absent proper compliance by the Commission with our decision on remand, the four-priority plan will control curtailment on the United system for the 1976–77 winter heating season.

The March 7 and May 2 orders of the Commission are reversed and remanded for proceedings consistent with this opinion.