SOUTHERN NATURAL GAS
COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

CONSOLIDATED GAS SUPPLY
CORPORATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

LACLEDE GAS COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

TEXAS EASTERN TRANSMISSION
CORPORATION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 76–3914, 76–3971, 76–3990
and 76–3991.

United States Court of Appeals,
Fifth Circuit.

Feb. 1, 1977.

Ronald L. Kuehn, Jr., for petitioner in No. 76–3914.

Drexel D. Journey, Gen. Counsel, F.P.C., for respondent in No. 76–3914.

Roy R. Robertson, Jr., Birmingham, Ala., for Southern Natural Gas Co., petitioner in No. 76–3914 and intervenor in No. 76–3991.

Karol Lyn Newman, Washington, D.C., for Consolidated Gas Supply Corp., petitioner in No. 76–3971 and intervenor in Nos. 76–3914, 76–3991.

J. David Mann, Jr., Washington, D.C., for Laclede Gas Co., petitioner in No. 76–3990, and intervenor in No. 76–3914.

Platt W. Davis, III, Washington, D.C., for Texas Eastern Transmission Corp., petition-

er in No. 76–3991, and intervenor in Nos. 76–3971, 76–3990, 76–3914.

Richard A. Solomon, Washington, D.C., for Public Serv. Comm. of N.Y., petitioner in No. 76–4433.

Allan Abbot Tuttle, Sol., John J. Lahey, Atty., Federal Power Commission, Washington, D.C., for Federal Power Commission.

Andrew P. Carter, New Orleans, La., Louisiana Power & Light Co., intervenor in Nos. 76–3914, 76–3990 and 76–3971.

Christopher T. Boland, Washington, D.C., for Texas Gas Transmission Corp., intervenor in Nos. 76–3914, 76–3990, 76–3991 and 76–3971.

Edward J. Grenier, Jr., Washington, D.C., for General Motors Corp., intervenor in Nos. 76–3914.

John T. Miller, Jr., Washington, D.C., for Allied Paper Inc., Monsanto Co., Texasgulf Inc., intervenors in Nos. 76–3914, 76–3991, 76–3990, 76–3971.

William T. Miller, Washington, D.C., for United Municipal, Distributors, intervenors in Nos. 76–3971, 76–3990, 76–3991, 76–3914.

Floyd I. Robinson, Jr., Washington, D.C., for General Motors Corp., intervenor in No. 76–3914.

Michael J. Manning, Washington, D.C., for Entex, Inc. & La. Gas Service Co., intervenor in Nos. 76–3971, 76–3990, 76–3991, 76–3914.

David B. Robinson, Washington, D.C., for State of Louisiana, intervenor in Nos. 76–3971, 76–3990, 76–3991 and 76–3914.

Jerome Ackerman, Washington, D.C., for Air Products & Chemical, Inc., and others, intervenors in Nos. 76–3971 and 76–3914.

William W. Bedwell, Washington, D.C., for Miss. River Transmission, intervenor in Nos. 76–3971, 76–3990, 76–3914 and 76–3971.

John S. Schmid, Washington, D.C., for Bay State Gas Co., and others, intervenors in Nos. 76–3990, 76–3991, 76–3971 and 76–3914.

Richard A. Solomon, Washington, D.C., for Public Service Comm. of the State of N.Y., intervenor in Nos. 76–3990 and 76–3991.

Stephen J. Small, Charleston, W. Va., for Columbia Gas Transmission Corp., intervenor in Nos. 76–3990, 76–3914, 76–3991 and 76–3971.

Barbara M. Gunther, Brooklyn, N.Y., for Brooklyn Union Gas Co. & Elizabethtown Gas Co., intervenors in Nos. 76–3990 and 76–3991.

James R. Lacey, Newark, N.J., for Public Service Electric & Gas Co., intervenor in Nos. 76–3990, 76–3914, 76–3991 and 76–3971.

Daniel J. Roberts, II, Providence, R.I., for New England State, intervenor in Nos. 76–3990, 76–3991 76–3914 and 76–3971.

Howard E. Wahrenbrock, Washington, D.C., for Mobile Gas Service Corp., & Clarke-Mobile Counties Gas District, intervenors in Nos. 76–3991 and 76–3914.

Francis J. McShalley, Washington, D.C., for Algonquin Gas Transmission Corp., intervenor in No. 76–3991.

John M. Kuykendall, Jr., Jackson, Miss., for Miss. Valley Gas Co., intervenor in No. 76–3914.

Albert J. Feigen, Washington, D.C., for American Sugar Cane League of the U.S.A., Inc., intervenor in Nos. 76–3914 and 76–3971.

Jon D. Noland, Indianapolis, Ind., for Indiana Gas Co., Inc., intervenor in No. 76–3991.

Gordon P. MacDougall, Washington, D.C., for Pa. Public Utility Commission, intervenor in No. 76–3971.

Harold L. Talisman, Washington, D.C., for Alabama Gas Corp., intervenor in Nos. 76–3991 and 76–3914.

Stephen Schachman, Philadelphia, Pa., for Philadelphia Gas Works, intervenor in Nos. 76–3971 and 76–3914.

Clayton L. Orn, Houston, Tex., for N.O. Public Service, Inc., intervenor.

Richard M. Merriman, Washington, D.C., for Miss. Power & Light Co., intervenor.

W. DeVier Pierson, Washington, D.C., for United Gas Pipe Line Co., intervenor.

John E. Holtzinger, Jr., Washington, D.C., Henry P. Sullivan, Richard B. Gordon, Pittsburgh, Pa., Norman A. Flaningam, Washington, D.C., James E. Wright, Jr., New Orleans, La., for petitioner in No. 76–3971.

J. David Mann, Jr., Washington, D.C., Richard L. Eckhart, St. Louis, Mo., for petitioner in No. 76–3990.

Platt W. Davis, III, Thomas L. Wylie, Washington, D.C., J. Evans Attwell, Jack D. Head, Houston, Tex., petitioner in No. 76–3991.

Before CLARK, RONEY and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

In this case, Southern Natural Gas Co. petitions for a review of two Federal Power Commission (FPC) orders in the proceedings to establish a natural gas curtailment plan for the United Gas Pipe Line Co. (United) system. Pursuant to its authority under the Natural Gas Act (the Act), the FPC has been confronting the natural gas curtailment problem for the past six years. Although no permanent solution has yet emerged, interim natural gas curtailment has been accomplished in the meantime under various temporary plans for the United system. The petition before us involves the course that these curtailment proceedings will take at least through the end of the current winter heating season, unless the FPC is able to reach before that time some final administrative resolution of the complex problem of equitable natural gas curtailment. Southern Natural and various intervenors argue that the FPC has disobeyed a mandate of this court handed down in February of 1976 in conjunction with our decision in *Louisiana Power & Light Co. v. FPC*, 526 F.2d 898 (5th Cir. 1976) (hereinafter *Louisiana Power & Light*), and that this court should take appropriate steps to enforce that mandate. We have now heard argument and received briefs from all interested parties, and thus proceed to the merits of Southern Natural's petition.

I

Although the procedural history of this matter has been detailed in several previous opinions of this court,[1] we shall here recount some of the recent developments for the purpose of clarity. Before November 1976, when we heard argument on the instant petition, the FPC was last before this court in connection with a curtailment plan for United in *Louisiana Power & Light*. That case involved the validity of the FPC's determination that United should curtail its gas deliveries under a newly-adopted three-category interim curtailment plan.[2] This new three-category plan was to replace the four-category curtailment plan which had been in effect (on an interim basis) since November 1, 1971. On review of the FPC's orders[3] establishing the new curtailment plan, this court determined that the FPC had improperly disapproved the old four-category plan and replaced it with the three-category plan. Accordingly, we reversed the FPC's orders implementing the three-category plan and remanded the case

1. *See, e. g., Southern Natural Gas Co. v. FPC*, 543 F.2d 530 (5th Cir. 1976); *Louisiana Power & Light Co. v. FPC*, 526 F.2d 898 (5th Cir. 1976); *State of Louisiana v. FPC*, 503 F.2d 844 (5th Cir. 1974).

2. This was the second three-category plan to gain FPC approval in the course of United's curtailment activities. The original three-category plan was used by United when it first began to curtail its gas deliveries, on November 1, 1970. This three-category plan was later displaced by the FPC-approved four-category plan, which began to operate on November 1, 1971.

3. Opinion No. 647, Docket Nos. RP 71–29, RP 71–120, United Gas Pipe Line Co., 49 FPC 179 (Jan. 12, 1973).

for further proceedings before the FPC. At the same time, however, since United had already begun to allocate its gas under the FPC's three-category plan, we allowed continued operation under the plan for the duration of the 1975–76 winter heating season. We cautioned, however, that

this is the last year during which the three-priority plan will remain in operation without the support of a proper finding on the invalidity of the four-priority plan. Absent proper compliance by the Commission with our decision on remand, the four-priority plan will control curtailment on the United system for the 1976–77 winter heating season.

526 F.2d at 911.

While *Louisiana Power & Light* was awaiting the decision of this court,[4] the FPC issued an order on October 31, 1975, approving an interim (one-year) settlement curtailment plan for the United system.[5] The order also directed that United "file by April 1, 1976, revised tariff sheets and an impact study setting forth United's proposed curtailment program for the winter 1976–77 and summer 1977 seasons." Before United had filed new tariff sheets pursuant to the FPC's order, however, this court decided *Louisiana Power & Light.*

Soon thereafter, on April 1, 1976, United tendered for filing with the FPC new tariff sheets designed to implement a permanent curtailment plan for the United system. United's proposal was to establish a new (and permanent) three-category curtailment plan to become effective on November 1, 1976, one day after the then-current interim curtailment plan expired. The United proposal was objected to by South-

ern Natural by way of a "Protest and Motion to Reject" filed with the Commission on April 23, 1976. Southern Natural's objections were overruled, however, on May 28, 1976, when the FPC issued an order which stated that the presence of numerous issues of fact foreclosed its authority to reject or summarily dispose of United's filing. This order formally accepted United's April 1, 1976, tariff sheets for filing. At the same time, however, the FPC suspended the operation of United's proposed plan, effective June 1, 1976. The effect of this suspension was that United's plan would become operative after five months had elapsed, if the FPC was unable to determine its permissibility by that time.[6] On September 14, 1976, the FPC issued an order denying various petitions for rehearing of its May 28 order.

On October 22, 1976, ten days before United's proposed curtailment plan would take effect due to the lapse of the Act's five-month suspension period, Southern Natural Gas Co. petitioned this court for a review of the FPC's order of May 28, 1976 (accepting the United filing), and its order of September 14, 1976 (denying rehearing on the May 28 order). Southern Natural Gas also moved this court to stay the FPC's orders of May 28 and September 14, contending that those orders contravened our *Louisiana Power & Light* mandate. Soon thereafter, we ordered the FPC and United to show cause why we should not issue an order enforcing that mandate.

On November 5, 1976, we heard argument from all interested parties, including the FPC and United, and issued a set of provisional findings and conclusions shortly

---

**4.** *Louisiana Power & Light* was argued on October 17, 1975, and this court's decision was handed down on February 5, 1976.

**5.** The settlement curtailment plan was essentially identical to the then-current three priority plan, with certain adjustments to cover the winter 1975–76 and summer 1976 heating seasons.

**6.** Under Section 4 of the Act, 15 U.S.C. § 717c (1976), which the FPC considered controlling under the circumstances, the FPC may suspend

the operation of any proposed plan for a maximum period of "five months beyond the time when it would otherwise go into effect." *Id.* § 717c(e). After the five months have elapsed, the proposed plan goes into effect by operation of law upon the motion of the party who filed the plan. *Id.* Since United offered its April 1976 tariff sheets with a proposed effective date of June 1, 1976, the five-month suspension period expired on October 31, 1976.

thereafter. *Southern Natural Gas Co. v. FPC*, 543 F.2d 530 (5th Cir., Nov. 13, 1976). We concluded that this court had the inherent power to enforce its *Louisiana Power & Light* mandate; that that mandate was clear and unambiguous; and that "[i]n the absence of a proper commission finding on the invalidity of the four-priority plan, the four-priority plan controls curtailment on United's system for the 1976–77 winter heating season." *Id.* at 532. We then ordered that the four-priority plan should govern United's curtailment procedures, with certain modifications which we set forth. At the same time, however, we reserved ruling on two specific legal issues which emerged as the controlling issues in this case: (1) whether United's April 1, 1976, filing was made pursuant to (a) section 4 of the Act and superseded this court's *Louisiana Power & Light* mandate, or (b) section 5(a) of the Act and thus transgressed that mandate; and (2) whether United's April 1, 1976, filing was invalid as a matter of law and should have been summarily rejected by the FPC. We also pro-

vided that our determination of these reserved issues would supersede our interim findings and conclusions. Since a resolution of these issues is of controlling importance in this case, we requested briefs from the myriad parties before us. We have now heard from all interested parties, and conclude: (1) that United's April 1 filing can be most appropriately characterized as a proceeding under section 4 of the Act; (2) that, as part of a section 4 proceeding, United's filing was beyond the scope of this court's prior mandate; and (3) that United's filing was not invalid as a matter of law, so that the FPC acted properly in refusing to reject the filing summarily. Accordingly, we affirm the FPC's orders dated May 28, 1976, and September 14, 1976, and deny the motions of Southern Natural Gas Co. for a stay or, in the alternative, a writ of mandamus or prohibition.

## II

■ The characterization question—that is, whether United's April 1, 1976, filing was made pursuant to section 4 of the Act [7]

---

7. Section 4 of the Act, 15 U.S.C. § 717c (1976), states in pertinent part:

*Rates and charges; schedules; suspension of new rates*

(a) All rates and charges made, demanded, or received by any natural-gas company for or in connection with the transportation or sale of natural gas subject to the jurisdiction of the Commission, and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is declared to be unlawful.

(b) No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

\* \* \* \* \* \*

(d) Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public. Such notice shall be given by filing with the Commission and keeping

open for public inspection new schedules stating plainly the change or changes to be made in the schedule or schedules then in force and the time when the change or changes will go into effect. The Commission, for good cause shown, may allow changes to take effect without requiring the thirty days' notice herein provided for by an order specifying the changes so to be made and the time when they shall take effect and the manner in which they shall be filed and published.

(e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement, in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the

or pursuant to section 5 of the Act [8]—is of critical importance here because of the scope of this court's mandate in *Louisiana Power & Light*. In that case, we reviewed an FPC order [9] which purported to establish the statutory validity of a three-category curtailment plan. This was not, however, the first time this three-category curtailment plan had been before this court for judicial review. In order to assess accurately our *Louisiana Power & Light* decision, we must begin our inquiry at a point much earlier in the history of the three-category plan before the FPC and this court.

The three-category plan in question had appeared originally in 1973, when the FPC ordered that United consolidate two categories of an extant four-category plan and curtail its gas deliveries under a new, FPC-ordered three-category plan. When these FPC orders were reviewed by this court, however, we found that the FPC had acted in excess of its statutory authority when it ordered the implementation of the three-category plan. *State of Louisiana v. FPC*, 503 F.2d 844 (5th Cir. 1974). There this court held that the FPC's three-category plan, altering as it did an extant curtailment plan offered by a private regulatee, was in effect promulgated pursuant to the Commission's authority under section 5(a) of the Act. Thus, we determined that, be-

fore the Commission ordered the three-category plan into effect, it should have evaluated the facts before it in light of section 5(a)'s substantive standard.[10] Since the FPC had failed to predicate the establishment of its own plan upon such an evaluation, this court vacated the defective FPC orders and remanded the case for further FPC action. We did, however, allow the three-category plan to remain in effect for the 1974–75 winter heating season, since the immediate reinstatement of United's four-category plan would have severely disrupted United's ongoing fuel supply arrangements with its various customers.

It was the FPC's response to our *State of Louisiana* mandate which was before the court in *Louisiana Power & Light*. In the proceedings following the *State of Louisiana* remand, the FPC had reevaluated both United's four-category plan and its own three-category plan in light of the appropriate standard under section 5(a), concluding that the four-category plan had been "just and reasonable" until January 12, 1973,[11] after which time it had become "unjust, unreasonable, unduly discriminatory, and preferential." Thus, the FPC concluded that its three-category plan had been properly promulgated under its section 5 authority. On appeal, however, this court once

time when it would otherwise go into effect; and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. . . .

8. Section 5 of the Act, 15 U.S.C. § 717d (1976), states in pertinent part:

*Fixing rates and charges; determination of cost of production or transportation*

(a) Whenever the Commission, after a hearing had upon its own motion or upon complaint of any State, municipality, State commission, or gas distributing company, shall find that any rate, charge, or classification demanded, observed, charged, or collected by any natural-gas company in connection

with any transportation or sale of natural gas, subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order. . . .

9. See n. 3, *supra*.

10. In other words, the FPC could not legally promulgate its own curtailment plan without finding that the four-category plan offered by United was "unjust, unreasonable, unduly discriminatory, or preferential" within the meaning of § 5(a).

11. This was the date of issuance of Opinion 647. See n. 3, *supra*.

again disagreed with the FPC. We concluded that although the FPC had applied the proper substantive standard, its findings that the four-category plan was "unjust and unreasonable" as of January 12, 1973, were not supported by substantial record evidence.[12] Accordingly, we remanded the case for further proceedings before the FPC. At the same time, we allowed the FPC's three-category plan— which had, by this time, twice failed to gain the imprimatur of propriety before this court—to remain in effect for the 1975–76 winter heating season.[13] We did so, however, with the caveat which is at issue here:

> [T]his is the last year during which the three-priority plan will remain in operation without the support of a proper finding on the invalidity of the four-priority plan. Absent proper compliance by the Commission with our decision on remand, the four-priority plan will control curtailment on the United system for the 1976–77 winter heating season.

*Louisiana Power & Light*, 526 F.2d at 911.

When our *Louisiana Power & Light* caveat is examined in light of the long (and sometimes convoluted) history of this case, its implications become clear. We cautioned the FPC that it had no statutory authority to impose its own curtailment plan upon United absent its compliance with the procedural and substantive standards of section 5. Thus, we warned that if the FPC were to promulgate its own plan— which it can do only under section 5—then it would first have to find in a proper manner that United's plan was "unjust, unreasonable, unduly discriminatory, and preferential" within the meaning of section 5(a). Our mandate did not address the right of private parties, such as United, to

adopt their own curtailment plans as gas supplies and customer needs changed. Assuming the jurisdictional prerequisites, such privately formulated plans would be subject to FPC review under section 4 of the Act, but the *Louisiana Power & Light* panel did not address that case. Thus, a proper construction of the panel's mandate must recognize the limitations of that mandate: it was intended to address only FPC action under section 5 of the Act.

We turn, then, to the question of whether United's April 1976 filing was a proceeding under section 5 of the Act, and thus subject to this court's *Louisiana Power & Light* mandate, or a proceeding under section 4 of the Act, and thus beyond the scope of that mandate. Upon our review of the record, we believe that the April 1 filing was a section 4 proceeding.

As a general proposition, the lion's share of natural gas curtailment over the past six years has been accomplished through the use of section 4. The primary reason for this approach is the greater celerity and flexibility inherent in section 4 proceedings. Under section 4, a regulatee can file its own plan, and, after 30 days, that plan will take effect unless the FPC suspends its operation. In no event can the FPC suspend a proffered plan for longer than five months. Thus, while a plan offered under section 4 must eventually acquire an administrative determination that it is "just and reasonable," it can go into effect while the administrative process is underway. Under section 5, however, the Act prescribes an entirely different procedural scheme, for it requires a potentially lengthy adjudicatory hearing *before* the FPC imposes its own plan. Indeed, the Supreme Court has specifically noted the pragmatic superiority of section 4

---

12. *See* 15 U.S.C. § 717r(b) (1976).

13. Our reasons for doing so were identical to those which prompted the same course of action in the previous winter heating season, when our *State of Louisiana* decision had first disapproved the FPC's three-category plan. The *Louisiana Power & Light* panel stated that
[t]his court is mindful . . . of the fact that this year's winter heating season is upon us. Undoubtedly, complex fuel supply ar-

rangements have been made with the three-category plan in mind. The disruptive potential inherent in immediate re-implementation of the four-priority plan is formidable. Accordingly, we allow the Commission to continue the three-priority plan in operation for the duration of the current winter heating season.
*Louisiana Power & Light*, 526 F.2d at 911.

procedures over section 5 procedures in the area of natural gas curtailment.[14] Generally, then, the curtailment plans of regulatees receive administrative review in the section 4 context.

In this case, however, Southern Natural and others argue that United's April 1976 tariff sheets were filed as part of a section 5 proceeding. In support of this contention, the petitioners point to the FPC's order of October 31, 1975,[15] calling for United to file new tariff sheets in accordance with a settlement agreement (among United and others) certified to the Commission on August 14, 1975. In Article VI, that settlement agreement called for United to file, on or before April 1, 1976, revised tariff sheets "setting forth United's proposed curtailment program for the winter 1976–77 and summer 1977 curtailment seasons." The stated purpose of this arrangement was to "provide United with a vehicle for placing a new curtailment program into effect if Phase II [16] of the proceeding is not completed prior to the 1976–77 winter season." The petitioners emphasize that United filed its April 1976 tariff sheets pursuant to this "future filing" section of the settlement agreement. Thus, they contend, United's filing was tantamount to an FPC-ordered curtailment plan, the statutory authority for which rests solely in section 5 of the Act.

We reject this argument because we are unable to equate the FPC's approval of the settlement agreement with an FPC determination of what constitutes a "just and reasonable" curtailment plan. Thus, we must conclude that the FPC's approval of the future filing provision lacked a fundamental characteristic of section 5 procedures: the existence of an *administrative* finding that existing practices are "unjust, unreasonable, unduly discriminatory, and preferential", and an *administrative* determination and imposition of what is "just and reasonable." We view the FPC's approval of Article VI of the settlement agreement as nothing more than an FPC directive that United file an early statement of its curtailment plans for the winter 1976–77 and summer 1977 seasons in order to facilitate, as the agreement itself states, "settlement discussions and/or hearings on said program well in advance of the expiration date hereof and, at the same time, provide United with a vehicle for placing a new curtailment program into effect if Phase II of the proceeding is not completed prior to the 1976–77 winter season." Since that is the case, the FPC's order, in essence, merely directed United to make a section 4 filing. Thus, the FPC's actions—and, of course, those of United—were entirely beyond the scope of this court's *Louisiana Power & Light* mandate. Once United had filed its curtailment plan under section 4, the FPC could not have suspended the operation of that plan beyond the maximum period which the statute allows, *i. e.*, five months. And since the Phase II hearings had not concluded before November 1, 1976, the FPC had at best an incomplete record upon which to determine whether United's offered plan was "just and reasonable" under section 4. Under those circumstances, the FPC had no choice but to allow United's plan to take effect. Accordingly, we hold that when the Commission allowed United's proposed curtailment plan to take effect, it acted within its statutory authority and did not contravene this court's *Louisiana Power & Light* mandate.

---

14. *FPC v. Louisiana Power & Light,* 406 U.S. 621, 643–46, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972). *See also Atlantic Refining Co. v. Public Service Comm'n,* 360 U.S. 378, 389, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). *See generally* Comment, *FPC Natural Gas Allocation: Curtailment in Context,* 50 Tex.L.Rev. 1370 (1972).

15. United Gas Pipe Line Co., Docket Nos. RP71–29, *et al.,* "Order Approving Settlement and Establishing Phase IV" (October 31, 1975).

16. The Phase II hearings were established by the FPC's order of March 7, 1975. Phase II was directed toward consideration of a permanent curtailment plan for the United system. In *Louisiana Power & Light*, this court generally approved the Commission's structure of hearings in the United case. *Louisiana Power & Light,* 526 F.2d at 910.

## III

■ The second question we reserved for decision is whether United's filing of April 1976 was invalid as a matter of law and should have been rejected by the Commission. *Southern Natural Gas*, 543 F.2d at 533. Since we have already determined that the United filing did not contravene our *Louisiana Power & Light* mandate, one potential source of support for the petitioners' argument is eliminated. The remaining arguments center around the nature of the plan offered by United. Since United's plan generally favored United's direct market customers at the expense of its pipeline customers, it is argued that United's plan transgressed the FPC's general policy that natural gas should be curtailed on the basis of "end use"[17] rather than on the basis of the type of customer to whom the gas will be sold.

While this argument may eventually prove itself valid, we do not find it persuasive in the context of the issue before us today. The FPC has only a very limited authority to reject summarily a regulatee's filing under section 4. As the D.C. Circuit has said, summary rejection of an offered filing is appropriate only where the filing is "patently . . . either deficient in form or a substantive nullity." *Municipal Light Boards v. FPC*, 146 U.S.App.D.C. 294, 450 F.2d 1341, 1345 (1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972).[18] The summary rejection device is seldom used to dispose of a matter on its merits; rather, it has been more accurately described as " 'a peremptory form response to filed tariffs' which classically is used . . . as a technique for calling on the filing party to put its papers in proper form and order." *Id.* at 1346, *quoting* F. Welch, Cases and Text on Public Utility Regulation 581 (1961). Even when the summary rejection procedure is used to dispose of a matter on its merits, its use is peculiarly inappropriate where there exists a bona fide controversy over material facts, or where there is "a need to ventilate the underlying facts to aid in policy determination." *Id.* at 1345.

Here, it is argued that the curtailment plan embodied in the tariff sheets offered by United for filing with the Commission ignored the Commission's end-use policy for curtailment plans to such an extent, that the Commission should have rejected United's plan outright. We do not agree. It is true that the FPC has a standing policy favoring end-use as the most equitable criterion for natural gas curtailment.[19] However, it is also true that this is a policy statement only, and, as such, does not preclude the possibility of contrary arrangements in exceptional cases. *See Pacific Gas and Electric Co. v. FPC*, 164 U.S.App.D.C. 371, 506 F.2d 33 (1974). In its tendered tariff sheets, United offered a plan which apparently departed from the end-use policies sanctioned by the FPC. This characteristic of the plan was obvious from the face of United's filing. On the basis of what the Commission had before it, however, it was impossible to determine whether or not United's departures from FPC-established policy were factually justifiable. Given the complexity of curtailment proceedings, and cognizant of the fact that the Commission refused to reject United's filing on the basis of bare tariff sheets and an incomplete record, we must conclude that the Commission acted properly when it accepted United's proposed tariff sheets.

## IV

For the foregoing reasons, the FPC's orders of May 28 and September 14, 1976, are AFFIRMED. To the extent that our provisional order of November 13, 1976, has regulated curtailment on United's system, that order is superseded by today's opinion. We would emphasize, of course, that our resolu-

---

17. *See* Order No. 467, 49 FPC 85 (1973); 18 C.F.R. § 2.78 (1976).

18. *See also National Organization for Reform of Marijuana Laws (NORML) v. Ingersoll*, 162 U.S.App.D.C. 67, 497 F.2d 654 (1974).

19. See n. 17, *supra.*

tion of the reserved issues, and our concomitant affirmance of the FPC orders before us, are intended for prospective application only. Nothing in today's opinion should be construed as a *nunc pro tunc* invalidation of the interim measures dictated by our November 13 order.

We would also add this further caveat in connection with today's decision. It would be sophistic to treat the injection of United's section 4 tariff filing in this ongoing section 5 proceeding as anything more than it was—a temporary expedient which the Commission agreed would permit a more orderly development of a proper permanent curtailment program for the United System. *Cf. United Gas Pipeline Company v. Mobile Gas Service Corp.*, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *Panhandle Eastern Pipeline Co. v. FPC*, 232 F.2d 467, 473 (3d Cir. 1956). Indeed, it is obvious that neither United nor the Commission ever contemplated that duplicative hearings would be conducted under section 4(e) to determine the lawfulness of the tariff. Rather, it clearly was contemplated that the section 5 procedures would go forward unabated. Therefore, we emphasize that our approval of United's section 4 tariff filing procedure is limited to its proclaimed purpose which was to establish a supervening but temporary curtailment program for the United system for the winter 1976–77 and the summer 1977 seasons. No action by the court is intended to anywise relieve the Commission of its immediate and continuing responsibility to resolve Phase II of the ongoing section 5 procedure and, as a preliminary prerequisite under our original mandate, to carry to completion the expedited implementation proceedings commenced under the Commissioner's order of November 24, 1976, in Docket Nos. RP71–29, et al.

AFFIRMED.